IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| GAIL LEWIS<br><br>v.<br><br>COMMONWEALTH OF PENNSYLVANIA, BOARD OF PROBATION AND PAROLE | CIVIL ACTION<br><br>NO. 13-4513 |
|---|---|

Baylson, J.                                                                                                    March 4, 2015

**MEMORANDUM RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Commonwealth of Pennsylvania Board of Probation and Parole (the "Board") moves for summary judgment on Plaintiff Gail Lewis's employment discrimination and retaliation claims. Agent Lewis, an African-American female parole officer, contends the Board discriminated and retaliated against her because of her race and gender by imposing excessive discipline on her for alleged violations of Board policy, preventing her from working with a foot injury, and changing her work assignments and caseload. Unlike many employment discrimination cases, in which the employee bringing suit has been terminated, Agent Lewis continues to work for the Board.

Agent Lewis began her employment with the Board on January 22, 2001, as a Parole Agent 1, and she was promoted to Parole Agent 2 on July 14, 2001. ECF 24, Def.'s Statement of Undisputed Facts ("SoF") ¶ 1. In July 2007, Agent Lewis was temporarily promoted to acting supervisor for approximately eight to ten months. Id. ¶ 5.

1

Agent Lewis's allegations center on two March 2010 incidents for which the Board suspended her without pay.[1] The first incident occurred when Agent Lewis visited the Delaware County Prison in her official capacity and allegedly told several staff members that Officer Tracey Hammett, with whom Lewis had worked at the State Correctional Institution Chester, was an "inmate lover" and had children with an inmate. Id. ¶ 8-10. Following an investigation and a fact-finding conference, Bretni Lentz, the Board's Labor Relations Coordinator, recommended that Agent Lewis receive a three-day suspension without pay, with a final warning, for violating Sections B.4.a and B.4.b of the Board's Code of Conduct by making inappropriate and unprofessional comments about Officer Hammett to the Delaware County Prison staff. Id. ¶¶ 13-19, 24.[2] In an affidavit, Ms. Lentz contends she had no knowledge of any of Agent Lewis's discrimination claims when she made this determination. Id. ¶ 20.

The second incident occurred on March 8, 2010. Agent Lewis was directed to transport an offender, Corey Brown, from a parole office to a halfway house. Id. ¶ 29. Prior to transporting Brown, Agent Lewis removed Brown's shackles and handcuffs, and Agent Lewis transported Brown by herself and permitted Brown to sit in the front seat with her, without handcuffs. Id. ¶¶ 30-31. Agent Lewis was involved in a traffic incident while transporting Brown, after which Brown complained that he was hurt and wanted to go to a doctor. Id. ¶ 32-33. Agent Lewis took Brown to the halfway house, not to the doctor. Id. ¶ 34. Agent Lewis did not fill out an accident report regarding the incident. Id. ¶ 35. Brown subsequently filed a federal

---

1 These are not the only incidents for which the Board has disciplined Agent Lewis. In 2004, Agent Lewis received a written reprimand for failure to attend a preliminary hearing. ECF 24, Def.'s SoF ¶ 3. In 2005, Agent Lewis received a one-day suspension for transporting her 15-year-old daughter in a state vehicle and taking her to a halfway house. Id. ¶ 4. In June 2008, Agent Lewis received a one-day suspension for acting in an inappropriate and unprofessional manner with employees of a car wash. Id. ¶ 6.

2 This discipline was subsequently reduced to a three day suspension without pay, without a final warning, after Agent Lewis filed a grievance with her union. Id. ¶¶ 25-28.

2

lawsuit against Agent Lewis because of the events occurring on March 8, 2010, which was subsequently settled between Brown and the Board.  Id. ¶ 36.

Following an investigation and Fact-Finding Conference, Ms. Lentz recommended that Agent Lewis receive a five day suspension without pay for violating Section B.10.b of the Board's Code of Conduct and Procedure 9.1.1 of the Board's Operations and Procedures Manual by failing to report involvement in an automobile accident while operating a state vehicle.  Id. ¶¶ 37-45.  In an affidavit, Ms. Lentz contends she had no knowledge of any of Agent Lewis's discrimination claims when she made this determination.  Id. ¶ 43.

Agent Lewis contends the Board subjected her to disparate treatment because of her race and gender.  Agent Lewis has made out a prima facie case of discrimination, and the Board has met its burden of showing legitimate non-discriminatory reasons for the adverse employment actions taken against Agent Lewis.  However, Agent Lewis has produced sufficient evidence, viewed in the light most favorable to her as the non-moving party, to show disputes of material fact about whether the Board's stated reasons for disciplining her were pretextual and whether the Board's actions following the filing of this lawsuit were motivated by retaliatory animus. Accordingly, the Court will deny the Board's motion for summary judgment.

## I. Procedural History

On October 13, 2010, Agent Lewis filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") claiming racial and gender discrimination and retaliation by the Board for her suspensions without pay and denial of overtime hours.  Id. ¶ 46.  On October 24, 2012, the PHRC notified Agent Lewis that it had investigated her complaint and was dismissing it for lack of probable cause.  Id. ¶ 48.

3

On August 5, 2013, Agent Lewis filed her Complaint alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981 and 1983, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 *et seq.*

On August 29, 2014, the Board moved for summary judgment (ECF 26).  The Board contends it is entitled to summary judgment (a) on the §1981, § 1983, and PHRA claims because the Board is not a person under §§ 1981 and 1983 and the federal and PHRA claims are barred by the Eleventh Amendment; and (b) on the Title VII claims because Agent Lewis has not pointed to evidence from which a reasonable factfinder could infer that the Board's nondiscriminatory reasons for disciplining Agent Lewis were pretextual or that the Board retaliated against her for filing her discrimination claims.

Agent Lewis filed a response (ECF No. 37) on September 15, 2014, in which she withdrew her § 1981, § 1983, and PHRA claims as barred by the Eleventh Amendment.  However, Agent Lewis argues that her evidence does establish impermissible racial and gender discrimination and retaliation.  Agent Lewis also seeks sanctions against the Board for its failure to prepare a Rule 30(b)(6) deponent and to produce certain documents.  On September 22, 2014, the Board filed a reply (ECF No. 38).

On February 3, 2015, the Court held oral argument and invited both parties to make supplemental submissions regarding the evidence in the record.  Plaintiff submitted her supplemental brief on February 9, 2015, and Defendant submitted its supplemental brief on February 13, 2015.

## II. Summary Judgment Standard

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Under Rule 56, the Court must view the evidence presented in the light most favorable to the non-moving party. Id. at 255.

## III. Racial and Gender Discrimination

### A. Legal Standard

Agent Lewis lacks direct evidence of racial and gender discrimination. In the absence of direct evidence of racial or gender discrimination, Title VII claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).

Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case by a preponderance of the evidence. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). The existence of a prima facie case of employment discrimination is a question of law. Id. To establish a prima facie case, a plaintiff must show (1) the plaintiff belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action despite being qualified; and (4) the circumstances raise an inference of discriminatory action. Id. The burden of establishing a prima facie case is not onerous. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

5

If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to articulate some legitimate nondiscriminatory reason for the adverse employment action. Sarullo, 352 F.3d at 797 (internal quotation marks and citation omitted).

If the defendant does so, the burden shifts back to the plaintiff who "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). A plaintiff may show that an invidious discriminatory reason was more likely than not a motivating cause by showing that "the employer has treated more favorably similarly situated persons not within the protected class." Jones, 198 F.3d at 413 (citation omitted). But a plaintiff using comparator evidence must show that a comparator was similarly situated in all relevant respects. See Wilcher v. Postmaster Gen., 441 F. App'x 879, 881-82 (3d Cir. 2011) (not precedential) ("Although this court has not explicitly stated what constitutes a similarly situated employee, we accept the standard used by other circuits that . . . comparator employees must be similarly situated in all relevant respects." (citations omitted)). Moreover, to show pretext and discredit an employer's proffered nondiscriminatory reasons, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" Perskie, 32 F.3d at 765 (emphasis in original).

**B. Summary of Factual Disputes**

Agent Lewis has met her burden of establishing a prima facie case, and the Board has produced evidence that there were legitimate, nondiscriminatory reasons for suspending Agent Lewis for her comments regarding Officer Hammett and her failure to report the traffic incident.

The Board's proffer of legitimate non-discriminatory reasons shifts the burden back to Agent Lewis to show the Board's reasons were pretextual. The Court concludes that Agent Lewis has produced sufficient evidence, viewed in the light most favorable to her as the non-moving party, to show disputes of material fact as to whether the Board's rationale for her discipline was pretextual. That evidence includes:

- Agent Lewis's extensive disciplinary record, including the Board's inability to name a similarly situated employee with the same amount of discipline as Agent Lewis, despite Agent Lewis having never received an unsatisfactory performance evaluation and testimony from her supervisor, Elda Casillas, and Deputy District Director James Poulos that they would recommend Agent Lewis for promotion and consider her very professional. ECF 37, Pl.'s SoF ¶¶ 6, 8, 15, 16, 21.

- Disputed testimony regarding whether Agent Lewis made the comments about Officer Hammett to denigrate the officer or out of concern for officer safety. Agent Lewis denies that she called Officer Hammett an "inmate lover," but she admits that she told a lieutenant at the prison that Officer Hammett had children with an inmate, contending she did so for the safety of the officers at the facility. ECF 24, Def's. SoF ¶ 11; ECF 27, Lewis Dep., 115:10-118:6, May 13, 2014.

- The Board's discipline of Agent Thomas Breeding, a white male, who received only a written reprimand and no suspension for missing a revocation hearing, even though such behavior is arguably unprofessional. ECF 37, Pl.'s SoF ¶ 1; ECF 39, Def.'s Answers to Pl.'s SoF ¶ 1.

- The Board's failure to discipline Agent Philip Pascoe, a white male, for calling a former district director a criminal and referring to an offender using profane language in an email, even though such behavior was classified as unprofessional by Ms. Casillas and Deputy District Director Poulos. ECF 37, Pl.'s SoF ¶¶ 2-3, 13, 20.

- The Board's naming of only two similarly situated white male agents who were disciplined for unprofessional conduct. Agent George Baird, a white male, was

7

   suspended in July 2009 for using unprofessional and degrading language toward an offender he was supervising, and Agent Robert Dean, a white male, was suspended in April 2014, four years after Agent Lewis first brought her discrimination claim, for an entry in his agent field notes.   ECF 24, Def.'s SoF ¶¶ 21-23.

- Disputed testimony about whether there was an auto accident involving Agent Lewis which she failed to report.  The Board contends Agent Lewis was involved in a collision with a City of Philadelphia water truck.  Id. ¶ 32.  Agent Lewis alleges she applied the brakes to avoid a collision but there was no accident.  ECF 37, Pl.'s Answer to Def.'s SoF ¶¶ 32-33.

- The Board's failure to discipline a white female agent who failed to report an accident in which she allegedly hit a pedestrian, and the Board's inability to name any similarly situated employees who received the same amount of discipline as Agent Lewis for failure to report an accident.  Id. ¶ 32.

- Disputes about whether Agent Lewis was denied the same amount of overtime as her peers or whether she has been afforded the opportunity to work overtime in the same manner as her co-workers who hold the same position and are not members of a special, federally funded team of deputized U.S. Marshalls.  ECF 24, Def.'s SoF ¶¶ 49-68.

Because this disputed evidence is sufficient to show a dispute of material fact, summary judgment is not warranted as to Agent Lewis's racial and gender discrimination claims.

### IV. Retaliation

**A. Legal Standard**

To establish a prima facie case of retaliation claim under Title VII, an employee must show that he or she (1) engaged in statutorily protected conduct; (2) suffered an adverse employment action; and (3) that the protected conduct was a but-for cause of the adverse action.  Univ. of Tex. Sw. Med. Ctr. V. Nassar, 133 S. Ct. 2517, 2533 (2013); Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006).  An "adverse employment action" is one that would "dissuade a reasonable worker from making or supporting a charge of discrimination."  Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).  If the plaintiff establishes a prima facie case,

8

then the burden shifts to the defendant to advance a legitimate, non-retaliatory reason for the adverse employment action.  Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003).  If the defendant satisfies that burden, the plaintiff must then prove that "retaliatory animus" had a determinative effect on the defendant's decisionmaking.  Id. (internal quotation marks and citation omitted).

## B. Summary of Factual Disputes

Agent Lewis has established a prima facie case of retaliation, and the Board has come forward with a legitimate, nondiscriminatory reason for its actions following the filing of Agent Lewis's PHRC complaint and this lawsuit.  Agent Lewis argues that the Board's proffered reasons are pretextual and that retaliation against her is ongoing.  Agent Lewis cites the following evidence, which the Board disputes:

- Her overtime increased dramatically following the filing of her complaint with the PHRC and this lawsuit.  Agent Lewis had alleged that several white male agents received more overtime than she did.

- Agent Lewis was prevented from working from April 23, 2014 until June 13, 2014, because she had a foot injury.  However, a white male agent was permitted to work with a foot injury.

- On her return to work on June 13, 2014, Agent Lewis contends her duties changed, and she was transferred to a different facility.

- On her return to work on June 13, 2014, Agent Lewis's caseload increased.  The Board contends that all agents had their caseloads increase at that time because of a change in Pennsylvania law.

The Court concludes that Agent Lewis has produced sufficient evidence, viewed in the light most favorable to her, to raise disputes of material fact as to whether the Board's proffered reasons for its actions were pretextual and whether retaliatory animus may have had a determinative effect on

the Board's decisionmaking. Accordingly, summary judgment cannot be granted on Agent Lewis's retaliation claim.[3]

## V. Sanctions Against the Board

Agent Lewis also contends the Court should impose sanctions on the Board because the Board failed to properly prepare a Rule 30(b)(6) deponent and failed to produce documents during discovery. Having reviewed Agent Lewis's allegations and the Board's arguments, the Court finds that sanctions against the Board are not warranted.

## VI. Conclusion

Because Agent Lewis has produced sufficient evidence, viewed in the light most favorable to her, to show disputes of material fact regarding whether the Board's proffered reasons for disciplining her and for the actions it took following her complaints of impermissible racial and gender discrimination were pretextual or motivated by retaliatory animus, the Court will deny the Board's motion for summary judgment.

An appropriate Order follows.

O:\CIVIL 13\13-4513 lewis v. comm. pa\13cv4513 MotSJ.docx

---

[3] The Board argues that Agent Lewis failed to exhaust her allegation that the Board violated Title VII by "repeatedly denying Plaintiff the opportunity to work for permanent civil service positions." See Pl.'s Complaint ¶ 26. This allegation is part of Agent Lewis's claim of impermissible racial and gender discrimination under Title VII, but it appears that Agent Lewis has abandoned this allegation because she failed to raise it in her briefing or argument before the Court.